Harper, J.
I shall first consider the ground of defendant’s motion, which respects the lapse of time or the statute of limitations. Defendants, or those under whom they claim, had been in possession of the estate, claiming it as their own, for more than twenty years before the filing of the bill. Probate of the will was granted in 1808, and the bill filed in 1829. And it may be observed that, at the time of filing the bill, complainant had no right of action, as the will was then in existence. It was in 1830, that the application was made to revoke the probate. If there had been no will and no administration, and defendants without color of title, had taken possession of the property and kept it for so long a time, I suppose their title would be good, under the decisions in Reed v. Price, State Rep. 1, and Hutchinson v. Noland, 1 Hill, 222. Administration would have been presumed and that defendants had acquired a title from the administrator. The lapse of twenty years is sufficient to raise the presumption of a grant from the State, of the satisfaction of a bond, mortgage or judgment, of the grant of a franchise or the payment of a legacy, or almost anything else that is necessary to quiet the title of property. After twenty years a bill of review will not lie. This is the general equitable bar. *It may be true, in general, as stated in the case between the same parties brought up on appeal from the ordinary, that when the goods of an intestate are converted, the cause of action arises from the time of granting administration, and from that time the statute will begin to run. But the cases to which I have referred •show, that there is a distinction when we come to consider the presumption arising from lapse of time. If defendants would have been protected if there had been no administration or probate, what makes the case ■worse for them under present circumstances ? Is it that instead of being ■trespassers committing a known wrong, they took possession under an apparently good title, for aught that appears, bona fide, believing the property to be their own ? Their possession was still adverse; they claimed for themselves; this was known to all the world, and must be *259 presumed to have been known to the complainants. It is replied that complainants (I speak of those who were of full age at the time of probate granted) were under a disability ; they could not sue while the will was in existence ; they were misled by the granting of the probate, and ignorant of their rights: in the language of the Chancellor, “they wanted light and liberty.” It is also said that they took possession in the character of trustees and it does not appear when that possession terminated, and that you cannot make the usual presumptions. You cannot presume an administration, for probate is shown and the will under which they claimed. Nor can you presume a valid will giving the property to them, for the recent decision of the Ordinary affirmed by the Court, shows that there was no will.
It is true that the complainants could not have sued while the will was in existence; nor in the cases of Beid and Price and Hutchinson and Noland, could there have been a suit till administration granted. By whose laches was the will permitted to continue in existence so long. According to our decision in the case of the will, the parties who were of full age at the time of the probate, had no right to contest the will after a lapse of four years; shall they be permitted to contest rights claimed under the will after a lapse of twenty? As observed by* the Chancellor, the complainants, or those *whomthey represent, certainly knew that they were the next of kin to Uriah Wicker, and in default of a will entitled to his estate. They must be presumed to have known of the will, of which they were so much interested to be informed. The Ordinary’s office was open to them and they might have known how the will was proved, and most probably did know. They might then have obtained legal advice upon the sufficiency of proof, and cited the administratrix to prove the will in solemn form. Under what disability did they labor then, which was removed when the application was made to the Ordinary, in 1830 ? In the case of Nicks v. Martindale, State Rep. 135, it was held that the statute of limitations, which had begun to run against an intestate, was not after his death suspended until administration granted, on the ground that it was the fault of those interested in the estate not to have taken out administration sooner. Was it not the fault of the complainants not to have sooner contested the will ? If twenty years was not sufficient to mature defendant’s title what time would have sufficed ? thirty ? fifty ? a century ? Hights consecrated by time must not be held by so impalpable a tenure.
Then as to taking possession in a fiduciary character.' By administering cum testamento annexo, Catharine Wicker took possession as trustee for herself, and this was as adverse to all the rest of the world as if the executors appointed by the will had qualified and delivered the estate to her as legatee. It was immaterial whether she held as administratrix or legatee. It is said, we cannot presume either a general administration or a valid will. It is hardly necessary to say that legal presumptions are not founded on actual belief. As observed by Lord Erskine in Hillary v. Waller, 12 Ves. 267, “mankind, from the infirmity and necessity of their situation, must, for the preservation of their property and rights have recourse to some general principle to take the place of individual and specific belief.” In the Mayor of Hull v. Horner, Cowp. 162, the grant of certain duties to the corporation of Kingston upon Hull was *260 presumed from long usage, though their charter was produced which contained no such grant. So in the case of Bedle v. Beard there quoted, 12 Co. 5, the grant of an advowson appendant to a manor was presumed *from possession, though the grant of' the manor was produced which did not include the avowdson. Presumptions must be sometimes made against the well-known truth of the fact. If twenty years have elapsed without the payment of interest or any acknowledgment of a bond, we must presume it paid, notwithstanding the fullest conviction that it never has been paid. In Hutchinson v. Noland, it was proved by the Ordinary that no administration had ever been taken out till granted to the plaintiff. As said in that case, we will presume whatever is necessary to give efficacy to long possession. If it were necessary to make any specific presumption in this case, I would presume that the parties who were of full age at the time of the probate, released to Catharine Wicker their interest in the estate, or their right to contest the will. The probate cannot be regarded as revoked at their suit, but at the suit of those who were under disability.
It is stated in the bill, and admitted by the answer, that all the brothers and sisters of Uriah Wicker (who were his next of kin) were living and of full age at the time of his death. It appears from the testimony, however, and seemed to be conceded at the hearing, that one brother (John) was then dead, having left infant children. Those who represent the other brothers and sisters are barred by the lapse of time; and as to them, the bill must be dismissed with costs. The children of John Wicker who came of age within four years next before the filing of the bill, are, I think, entitled to an account. But on the authority of Rowland v. Best, 2 M’C. Ch. Rep. 317, I think it must be without interest until the bill filed. It is not stated in that case, that the parties entitled to the estate were infants. The infancy of some of the parties in this case saves their right to an account; but the claim to interest is within the discretion of the Court, according to the equity of circumstances. The defendants, or those under whom they claim, believed themselves the owners of the property, and had good reason so to believe. In this confidence they expended the income, and it would be hard, approaching to the effect of fraud, to call upon them to account for what they have thus expended.. A man is not supposed *to expend the capital of his estate, but he may justly be presumed to expend the income.
Questions are made, whether JohnB. Kinard is liable for the devastavit, as it is called, of his wife, and whether his marital rights attached on the property in his possession. Catharine Wicker sold the whole estate, and John Kinard very soon after married her. In point of fact there is little doubt that the whole of the" proceeds went into his possession. In respect to the assets thus received, he became liable as administrator, in right of his wife, to any one who had a claim on the estate of Uriah Wicker. There is no question of devastavit; but I think the marital rights must be held to have attached as against all the world, but the parties (children of John Wicker) who are entitled to relief under this decree. Suppose the will to have been a valid one, would there have been any question as to the attaching of the marital rights ? An executor who is also legatee, may, by the slightest act, signify his intention to take *261 possession m Ms character of legatee, and terminate his possession as executor. If the will had been valid, and Kinard and wife entitled, under it, to the whole estate, could any thing be more extravagant than to suppose, that during the twenty years that he possessed the estate and dealt with it as his own, he continued to hold possession in his character as trustee. But as to all the rest of the world, except the parties before mentioned, the ease is the same as if the will had been valid. All others are precluded by length of time from questioning any title that John P. Kinard may choose to set up. They are estopped by their acquiescence. To the children of John Wicker, who are declared to be entitled to relief; the representative of John P. Kinard must account, as for the estate of Uriah Wicker.
It is ordered and decreed, that the decree of the Chancellor be modified according to the views herein expressed.
Johnson, J., concurred.